FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 2 8 2009

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

IP CO., LLC and SIPCO, LLC,

        Plaintiffs,

v.

CELLNET TECHNOLOGY, INC.,
TROPOS NETWORKS, INC., HUNT
TECHNOLOGIES, LLC, and B&L
TECH CO., INC.,

        Defendants.

CIVIL ACTION NO.

1:06-CV-03048-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on defendant B&L's Motion for Summary Judgment on Certain of Plaintiffs' Affirmative Defenses [416], B&L's Motion for Summary Judgment on Plaintiff IP CO.'s Breach of Contract Claim [418], defendants Cellnet and Hunt's Motion for Leave to File Excess Pages [421], Cellnet and Hunt's Motion for Summary Judgment on Counts Two, Three, Four, Five, and Seven of Plaintiffs' Amended Complaint [422], B&L's Motion for Summary Judgment Regarding Plaintiff SIPCO's Material Breaches of Contract Obligations to B&L [423], Cellnet and Hunt's Motion for Summary Judgment on Count Six of Plaintiffs' Amended Complaint [425], Cellnet and Hunt's Motion for Summary Judgment on Count Five of Plaintiffs' Amended Complaint [426], B&L's Motion for Summary

Judgment on Plaintiffs' Right of First Offer Claim Under the 2004 License/Assignment Agreement [427], Hunt's Motion for Summary Judgment on Counterclaim Three of Hunt's Answer and Counterclaims [429], B&L's Motion for Summary Judgment on Supersession of the 2004 Right of First Offer Provision by the 2005 Release Agreement [430], B&L's Motion for Summary Judgment on SSI's July 31, 2006 Transfer of "Substantially All of Its Assets" as Matter of Law, on Plaintiffs' Count Four, and on Plaintiffs' Claim for Specific Performance [433], and Cellnet and Hunt's Motion for Leave to File Under Seal [516].

The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that B&L's Motion for Summary Judgment on Certain of Plaintiffs' Affirmative Defenses [416] and B&L's Motion for Summary Judgment on IP CO.'s Breach of Contract Claim [418] should be **GRANTED as unopposed,** B&L's Motion for Summary Judgment on Plaintiffs' Right of First Offer Claim [427], B&L's Motion for Summary Judgment on Supersession of the 2004 Right of First Offer Provision by the 2005 Release Agreement [430], and B&L's Motion for Summary Judgment on SSI's July 31, 2006 Transfer of "Substantially All of its Assets" as a Matter of Law [433] should be **GRANTED,** B&L's Motion for Summary Judgment Regarding SIPCO's Material Breaches [423] should be **DENIED,** Plaintiffs' and Cellnet and Hunt's Joint Motion to Dismiss [529] should be **GRANTED,** and Cellnet and Hunt's Motion for Leave to File Under Seal [516], Cellnet and

AO 72A
(Rev.8/82)

Hunt's Motion for Leave to File Excess Pages [421], Cellnet and Hunt's Motion for Summary Judgment on Counts Two, Three, Four, Five, and Seven [422], Cellnet and Hunt's Motions for Summary Judgment on Counts Five and Six [425] and [426], and Hunt's Motion for Summary Judgment on Counterclaim Three of its Answer and Counterclaims [429] should be **DENIED as moot.**

## BACKGROUND

This lawsuit involves a series of interrelated patent licensing and assignment agreements between plaintiff SIPCO, LLC ("SIPCO") and defendant B&L Tech Company ("B&L").[1] (Amended Compl. [151] at 3-11.) During the late 1990's and early 2000's, B&L developed and obtained a portfolio of patents related to technology involving wireless mesh network systems. (Order [343] at 2.) The technology had various applications both within and outside of the utility industry. (Id.)

In November 2003, three individuals associated with B&L formed the separate company SIPCO as part of a restructuring of B&L. (Id.) On March 31, 2004, SIPCO and B&L executed an "Intellectual Property License and Assignment Agreement" ("the Licensing Agreement"). (Id. at 2-3.) Pursuant to the Licensing Agreement, B&L licensed and assigned certain patents to SIPCO in return for royalty payments.

---

[1] B&L was formerly known as StatSignal Systems, Inc. ("SSI"). (Order [343] at 2, n.1.) For consistency, and to avoid confusion, the Court refers to the former SSI as B&L.

AO 72A
(Rev.8/82)

(*Id.* at 3.) The Licensing Agreement granted SIPCO rights to the patents outside the utility industry, while preserving B&L's rights to the patents within the utility industry. (Order [343] at 3.)

In connection with the Licensing Agreement, B&L and SIPCO executed a "Notification of Sale and Right of First Offer Agreement" ("the Notification Agreement"). (*Id.*) The Notification Agreement required B&L to give SIPCO notice of B&L's intent to sell or transfer the licensed patents, either alone or in connection with a sale of B&L's business, to a third party. (Notification Agreement at ¶ 2, attached to SIPCO's Appx. of Documents [231] at Tab A.) Upon receiving notice of an intended sale, the Agreement gave SIPCO the right to purchase the patents on the same terms as offered to the proposed third-party buyer. (*Id.*)

Paragraph 2 of the Notification Agreement carved out an exception to the notification and right of first offer requirements in the event of a sale to third-party Landis & Gyr, Inc. ("L&G"). (*Id.*) Specifically, Paragraph 2 permitted B&L to sell or transfer the licensed patents to L&G, or, in certain specified situations, to an affiliate of L&G, without providing notice or a right of first offer to SIPCO. (*Id.*) The reason that the parties included the L&G exception is that B&L was already negotiating an asset sale to L&G when the parties executed the March 31, 2004 Agreements. (Order [343] at 4.) However, those negotiations did not ultimately result

4

in a sale to L&G in 2004. (*Id.*)

In November 2005, SIPCO and B&L executed a Release Agreement ("the 2005 Release") modifying the terms of the Licensing and Notification Agreements. (2005 Release, attached to SIPCO's Appx. of Documents [231] at Tab B.) Several circumstances led to the 2005 Release. (Order [343] at 4.) First, SIPCO wanted to reduce its royalty and payment obligations under the Licensing Agreement. (*Id.*) Second, SIPCO needed to modify provisions in the Licensing Agreement and the Notification Agreement that created a potential bar to SIPCO's plan to transfer its patent assets to a holding company. (Pls.' Resp. to B&L's Statement of Material Facts ("SMF") [504] at ¶¶ 7-8, 13.) Finally, B&L had, at this point, entered into negotiations to sell its assets, including the licensed patents, to third-party Motorola. (Order [343] at 4.) B&L therefore wanted to be relieved of its obligations under the Notification Agreement in the event of B&L's sale of its assets to any third party, including Motorola. (*Id.*)

The 2005 Release reflects the parties' intent on all of these issues. (2005 Release at ¶¶ 3 and 10.) The Release reduces and caps SIPCO's royalties, and permits a one-time transfer of SIPCO's patent assets to a holding company. (*Id.* at ¶ 3 and Pls.' Resp. to B&L's SMF [504] at ¶¶ 21-23, 30-31.) It also contains a term providing that B&L's assets "shall be assignable by [B&L], without prior

5

authorization of [SIPCO], to an entity that acquires at least substantially all of the assets of [B&L]." (*Id.* at ¶ 10.4.)

On July 31, 2006, B&L entered into an Asset Purchase Agreement ("APA") with Hunt Technologies, Inc. ("Hunt"), an affiliate of L&G. (Order [343] at 5.) Pursuant to the terms of the APA, Hunt purported to obtain "substantially all" of B&L's assets, including the patents that had been licensed to SIPCO under the Licensing Agreement. (*Id.*) B&L did not give SIPCO notice of the Hunt transaction. (*Id.*) Neither did B&L give SIPCO the opportunity to purchase the licensed patents on the same terms as offered to Hunt. (*Id.*)

SIPCO became aware of the Hunt transaction in October, 2006. (*Id.*) SIPCO believed that the transaction violated its rights to notice and first offer under the Notification Agreement. (Amended Compl. [151] at Count II.) SIPCO, along with the related company IP CO., filed this lawsuit asserting breach of contract claims against B&L and Hunt. (*Id.*) In addition, SIPCO asserted patent claims against defendants Cellnet Technology, Inc. ("Cellnet") and Tropos Networks, Inc. ("Tropos"). (*Id.* at Count I.) Defendants asserted various counterclaims, including a claim by B&L that SIPCO had violated its licensing and reporting obligations under the 2004 Licensing Agreement. (Hunt's Counterclaim [164] at 27-28.)

Plaintiffs subsequently filed a motion for partial summary judgment on their breach of contract claim, which the Court denied

6

based on its interpretation of the terms of the 2004 Notification Agreement and the 2005 Release. (Order [343] at 9-13.) Defendants have now filed multiple motions for summary judgment on plaintiffs' breach of contract claim. (B&L's Mots. for Summ. J. [427], [430], and [433] and Cellnet and Hunt's Mots. for Summ. J. [422], [425], and [426].) B&L has also filed motions for summary judgment as to certain affirmative defenses asserted by plaintiffs, and as to IP CO.'s breach of contract claim. (B&L's Mots. for Summ. J. [416] and [418].) In addition, B&L has filed a motion for summary judgment on its counterclaim against SIPCO for breach of contract. (B&L's Mot. for Summ. J. Regarding SIPCO's Material Breaches [423].) Those motions, as well as a number of related motions, are presently before the Court.

## DISCUSSION

## I.  Summary Judgment Standard

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at

AO 72A
(Rev.8/82)

249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be "'no genuine issue as to any material fact,'" as "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light

AO 72A
(Rev.8/82)

most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## II.   Cellnet and Hunt's Motions for Summary Judgment

After filing its motions for summary judgment, defendants Cellnet and Hunt informed the Court that they were pursuing a settlement agreement with plaintiffs. (Consent Stipulation [518].) In accordance with the Agreement, the Court recently granted Cellnet and Hunt's Joint Motion to Dismiss (Order [541]). Pursuant to the joint dismissal, the Court **DENIES as moot** Cellnet and Hunt's Motion for Leave to File Under Seal [516], Cellnet and Hunt's Motion for Leave to File Excess Pages [421], Cellnet and Hunt's Motion for Summary Judgment on Counts Two, Three, Four, Five, and Seven [422], Cellnet and Hunt's Motions for Summary Judgment on Counts Five and Six [425] and [426], and Hunt's Motion for Summary Judgment on Counterclaim Three of its Answer and Counterclaims [429].

9

AO 72A
(Rev.8/82)

## III. **B&L's Motions for Summary Judgment**

### A. **Motions Regarding Certain of Plaintiffs' Affirmative Defenses, IP CO.'s Breach of Contract Claim, and Plaintiffs' Claim for Equitable Relief and Specific Performance**

B&L has filed a motion for summary judgment on certain affirmative defenses asserted by plaintiffs in response to B&L's counterclaims, including a challenge to B&L's standing and the equitable defenses of unclean hands and laches. (B&L's Mot. for Summ. J. as to Certain Affirmative Defenses [416].) In support of that motion, B&L contends that: (1) B&L has standing to assert counterclaims for breach of contract because B&L has a valid assignment in its favor on the contract claims and (2) plaintiffs' unclean hands and laches defenses are inapplicable because B&L has only asserted legal claims, as opposed to equitable claims, against plaintiffs. (*Id.* at 8-14.) B&L has also filed a motion for summary judgment as to IP CO.'s breach of contract claim. (B&L's Mot. for Summ. J. as to IP CO.'s Breach of Contract Claim [418].) In support of that motion, B&L notes that IP CO. is not a party to the contract that forms the basis of the breach of contract claim. (*Id.*)

Plaintiffs have failed to respond to the above motions, both of which appear to be meritorious. *See Scott v. Cushman & Wakefield of Georgia, Inc.,* 249 Ga. App. 264, 265-66 (2001)(the doctrine of privity requires that only parties to a contract may sue to enforce

10

it, but the right to sue is freely transferable) and *Park v. Fortune Partner, Inc.,* 279 Ga. App. 268, 274 (2006)("'The equitable doctrine of unclean hands . . . has no application to an action at law.'") (quoting *Holmes v. Henderson,* 274 Ga. 8, 8-9 (2001)). Moreover, plaintiffs have indicated in other filings that they do not intend to rely on the unclean hands or laches defenses, and that IP CO. is not asserting a breach of contract claim. (B&L's Reply [520] at 1-2 and B&L's Reply [521] at 2.) Accordingly, the Court **GRANTS as unopposed** B&L's motions for summary judgment as to certain affirmative defenses asserted by plaintiffs [416] and as to IP CO.'s breach of contract claim [418].

In conjunction with its motion for summary judgment on B&L's transfer of "substantially all" of its assets in the July 31, 2006 transaction, B&L also requests summary judgment on plaintiffs' claim for specific performance of B&L's obligations under the 2004 Notification Agreement. (B&L's Mot. for Summ. J. on SSI's July 31, 2006 Transfer of "Substantially All of its Assets" [433].) Plaintiffs recently withdrew their claims for specific performance and their claims seeking equitable relief against any assets transferred as part of the Hunt transaction. (Joint Mot. to Dismiss, [539] and Order [541].) Accordingly, the Court **GRANTS as unopposed** that portion of B&L's motion [433] seeking summary judgment on plaintiffs' claim for specific performance.

11

**B.  Motions on Plaintiffs' Right of First Offer Claim**

    1.   The Hunt Transaction Did Not Violate the 2004
       ·Notification Agreement.

In its previous order, the Court interpreted the 2004
Notification Agreement to exempt a transaction involving the sale of
"substantially all" of B&L's assets to an "affiliate" of L&G. (Order
[343] at 9-11.) This interpretation was based on the plain language
of Paragraph 2 of the Agreement, which states that:

> [B&L] shall not (i) sell its business to any party *other than
> Landis & Gyr, Inc. or its successors in interest or its
> affiliates,* whether through a sale of all or substantially all
> of its assets, or through a merger, or (ii) sell, transfer,
> convey or assign to any party other than Landis & Gyr, Inc. any
> of the patents or patent applications that are subject to the
> license granted to [SIPCO] pursuant to the [Licensing
> Agreement].

(Notification Agreement [231] at ¶ 2 (emphasis added).)

Giving the above terms their "usual and ordinary" meaning, the
Court reasoned that the sale of "substantially all" of B&L's assets
would necessarily include a sale of the licensed patents. (Order
[343] at 10.) Reading ¶ 2(ii) together with ¶ 2(i), the Court thus
held that the Notification Agreement must be interpreted to exempt
two types of transactions from its terms: (1) a sale of substantially
all of B&L's assets, including the licensed patents, to L&G or one of
its affiliates; or (2) a sale only of the licensed patents to L&G.
(*Id.* at 10-11.)

Contrary to plaintiffs' suggestion, the Court's interpretation

of the Notification Agreement was not "tentative." (Pls.' Consolidated Resp. to Defs.' Mots. for Summ. J. ("Pls.' Consolidated Resp.") [499] at 3.) Nevertheless, plaintiffs persist in their argument that ¶ 2(ii) of the Agreement must be interpreted strictly to preclude a sale of the licensed patents, even to an affiliate of L&G as part of a sale of substantially all of B&L's assets, without providing notice and a right of first offer to plaintiffs. (*Id.* at 8-11.) As the Court explained in its previous order, plaintiffs' argument makes sense only if the Court reads ¶ 2(ii) in isolation from ¶ 2(i). (Order [343] at 10.) Reading the provisions together, plaintiffs' proposed interpretation creates the odd result that a transaction that is expressly contemplated and authorized by ¶ 2(i) is simultaneously prohibited by ¶ 2(ii). Such an interpretation conflicts with Georgia law.[2] *See* O.C.G.A. § 13-2-2(4)(requiring the Court to consider "the whole contract . . . in arriving at the construction of any part") and *Anderson v. Anderson,* 274 Ga. 224, 226

---

[2] Paragraph 5(f) of the Notification Agreement provides that: "This Agreement shall be construed under and governed by the laws of the State of Georgia, without regard to any conflict of law principles." (Notification Agreement [231] at ¶ 5(f).) The Court thus applies Georgia contract law to interpret the Agreement. *See Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc.,* 485 F.3d 1233, 1240 (11th Cir. 2007)("A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state.") and *Kinnick v. Textron Fin. Corp.,* 205 Ga. App. 429, 430 (1992)(Georgia courts "will normally enforce a contractual choice of law clause" absent a contrary public policy).

(2001)(applying O.C.G.A. § 13-2-2(4)).

Moreover, plaintiffs' attempt to reconcile ¶¶ 2(i) and 2(ii) by posing several hypotheticals in which a sale of "substantially all" of B&L's assets could potentially exclude a sale of the licensed patents is unpersuasive. (Pls.' Consolidated Resp. [499] at 12-19.) It is undisputed that the licensed patents constituted a significant percentage of B&L's assets at the time of the Hunt transaction. (Order [343] at 10, n.3.) Giving the term "substantially all" its ordinary meaning, a sale of "substantially all" of B&L's assets would necessarily include the licensed patents. *See* O.C.G.A. § 13-2-2(2)("Words generally bear their usual and common signification") and *Mkt. Place Shopping Ctr. v. Basic Bus. Alternatives, Inc.,* 213 Ga. App. 722 (1994)(applying O.C.G.A. § 13-2-2(2)). Indeed, plaintiffs contend that the term "substantially all" should be defined as "essentially everything." (Pls.' Consolidated Resp. [499] at 31.) Applying plaintiffs' own definition of the term "substantially all" it is impossible to conceive of such a sale that would not involve the licensed patents.

In addition to their arguments concerning the correct interpretation of the Notification Agreement, plaintiffs also contend that, as a factual matter, the 2006 Hunt transaction did not involve

14

"substantially all" of B&L's assets.[3] (*Id.* at 31-42.) All of the evidence in the record is to the contrary. The documents underlying the 2006 Hunt transaction expressly state that:

> the parties desire to enter into an agreement whereby Seller [B&L] will transfer to Buyer [Hunt], and Buyer will acquire from Seller, substantially all of Seller's assets in exchange for the consideration herein provided.

(B&L's SMF [442] at ¶ 7 and Pls.' Resp. to B&L's SMF [501] at ¶ 7.) Every individual involved in negotiating the Hunt transaction confirmed that the sale involved "a transfer of substantially all of the assets" of B&L. (*Id.* at ¶¶ 8-10, 12.)

The only asset that B&L retained in the Hunt transaction was the royalty obligation from SIPCO.[4] (*See* Pls.' Consolidated Resp. [499] at 34.) Plaintiffs concede that B&L offered to transfer the SIPCO royalty obligation, but Hunt was unwilling to pay for it. (Pls.' Resp. to B&L's SMF [501] at ¶ 19.) Apparently, Hunt believed that

---

[3]    In its order ruling on plaintiffs' motion for summary judgment, the Court assumed that B&L conveyed substantially all of its assets to Hunt in the 2006 APA, but noted that neither party had addressed the issue sufficiently to rule on it as a matter of law. (Order [343] at 5, n.2.)

[4]    Plaintiffs contend that B&L also retained a pre-existing license agreement with L&G. (Pls.' Consolidated Resp. [499] at 39-40.) However, there is undisputed evidence in the record that the L&G license was mutually terminated in connection with the July 31, 2006 asset transfer. (APA at § 2.4, attached to B&L's Compilation of Evidence [444] at Ex. I.) Section 2.4 of the APA provides that: "As of the Closing, the [L&G] license will terminate in its entirety and neither Seller or Landis & Gyr will have any further rights or obligations thereunder." (*Id.*)

15

the SIPCO royalty stream was worthless. (*Id.* at ¶ 20.) Indeed, as of the July 31, 2006 Hunt transaction, SIPCO had not made any royalty payments to B&L, and had acknowledged that it could not afford to meet its royalty obligations. (B&L's SMF [445] at ¶ 5 and Pls.' Resp. to B&L's SMF [504] at ¶ 5.) Under the circumstances, B&L's retention of the SIPCO royalty stream does not change the character of the Hunt transaction as a sale of "substantially all" of B&L's assets.

In fact, plaintiffs have admitted in other filings that B&L transferred "essentially everything" to Hunt in the July 31, 2006 asset sale. (*See* Pls.' Br. in Supp. of Mot. to Appoint Receiver [358].) In support of their prior motion to appoint a receiver for B&L, plaintiffs argued that B&L "no longer ha[d] any income producing assets and ha[d] no ongoing business" as a result of the Hunt transaction. (*Id.* at 7.) In connection with that motion, SIPCO representative Oliver Lee confirmed that "B&L ha[d] no operations" following the Hunt transaction. (Lee Decl. [357] at ¶¶ 3, 10.) Given plaintiffs' admissions, and the other evidence in the record concerning the July 31, 2006 asset sale, the only reasonable conclusion is that the Hunt transaction involved a sale of "substantially all" of B&L's assets, as specified in ¶ 2(i) of the Notification Agreement.

Finally, plaintiffs argue that Hunt is not an "affiliate" of

16

L&G, as that term is used in the Notification Agreement. (Pls.' Consolidated Resp. [499] at 43-52.) The Licensing Agreement defines "affiliate" as follows: "An 'affiliate' of an entity means a person or entity that controls, is controlled by, or is under common control with the entity." (*Id.* at 45 and Licensing Agreement at § 12.1(b).) Plaintiffs concede that Hunt and L&G were under the common ownership and control of the Bayard corporation in July, 2006. (B&L's Br. in Supp. of Summ. J. [440] at 3-4 and Pls.' Consolidated Resp. [499] at 52.) Hunt thus qualified as an "affiliate" of L&G at the time of the Hunt transaction. However, plaintiffs argue that the term "affiliate" should be limited to entities that were affiliated with L&G when the parties executed the Notification Agreement in 2004. (Pls.' Consolidated Resp. [499] at 43-53.) Hunt did not become an "affiliate" of L&G until 2006. (*Id.* at 52.)

There is no basis in the record for plaintiffs' argument. Neither the Licensing Agreement nor the Notification Agreement limits the definition of "affiliate" to current affiliates of L&G. The parties easily could have included such a limitation, if that had been their intention. *See Peachstate Developers, LLC v. Greyfield Res., Inc.,* 284 Ga. App. 501, 504 (2007)("There being no provision in the contract from which we can conclude that time was intended to be of the essence . . . we find that the trial court erred by determining that time was of the essence in this contract."). In

17

AO 72A
(Rev.8/82)

fact, the surrounding language in the Notification Agreement suggests that the parties did not intend to define the allowable transactions of paragraph 2 according to current business relationships. Most notably, paragraph 2(i) permits a sale of B&L's business to L&G *or its successors in interest.* (2004 Notification Agreement [231] at ¶ 2(i).) *See Auto-Owners Ins. Co. v. Reed,* 286 Ga. App. 603, 611 (2007)(relying on the context of the surrounding language to interpret ambiguous terms in a contract).

In short, all of the evidence in the record supports the conclusion that Hunt qualifies as an "affiliate" of L&G, and that the Hunt transaction involved a sale of "substantially all" of B&L's assets, as those terms are used in paragraph 2(i) of the Notification Agreement. Applying the Court's interpretation of the Agreement to the facts in the record, the Hunt transaction was thus expressly exempt from the requirements of the Notification Agreement. Accordingly, the Court **GRANTS** B&L's motions for summary judgment on plaintiffs' right of first offer claim [427] and on the issue of whether B&L transferred "substantially all" of its assets [433].

2.      The Notification Agreement was modified and superseded by the 2005 Release.

Even assuming the Hunt transaction violated the terms of the Notification Agreement, B&L still is entitled to summary judgment. In November 2005, the parties signed a Release Agreement, which

18

substantially modified and superseded the agreements that the parties executed in 2004, including the Notification Agreement. (2005 Release [231].) The 2005 Release relieved SIPCO of some of its royalty and payment obligations under the Licensing Agreement. (*Id.* at Ex. 1, ¶ 3.) In return, the Release granted certain rights back to B&L, including the right to assign the patents that were the subject of the parties' various agreements "without prior authorization of [SIPCO], to an entity that acquires at least substantially all of the assets of [B&L]." (*Id.* at ¶ 10.4.) Regardless of the terms of the Notification Agreement, the Hunt transaction was expressly permitted by ¶ 10.4 of the 2005 Release.[5]

SIPCO's argument that ¶ 10.4 does not apply to the licensed patents is unpersuasive. The relevant language of ¶ 10.4 reads as follows:

> This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto, and this Agreement shall be assignable by [B&L], without prior authorization of [SIPCO], to an entity that acquires at least substantially all of the assets of [B&L].

(*Id.*)

According to SIPCO, the above language does not modify the terms

---

[5] Pursuant to ¶ 10.5 of the 2005 Release, the terms of the Release supersede any conflicting provisions in the parties' previous agreements, including the Notification Agreement. (2005 Release at ¶ 10.5.)

AO 72A
(Rev.8/82)

of the Notification Agreement. (SIPCO's Consolidated Resp. [499] at 61-66.) However, the term "agreement" is defined in the 2005 Release to include "all Exhibits attached to this Agreement." (2005 Release at ¶ 1.1.) Both the Licensing Agreement and the Notification Agreement are listed in Exhibit A to the Release. (*Id.* at Ex. A.) The Release thus expressly authorizes B&L to assign the rights underlying the Licensing Agreement without the prior authorization that otherwise would be required by the Notification Agreement.

Other terms in the 2005 Release confirm that the Release modified and superseded the 2004 Notification Agreement. For example, the Release contains the following provision:

> U.S. Patent No. 6,437,692. If at least substantially all the assets of [B&L] are acquired by a third party other than Landis & Gyr, Inc., and such third party declines ownership of U.S. Patent No. 6,437,692 (the '692 Patent) and declines a license under the '692 Patent, then [B&L] agrees to negotiate in good faith [with SIPCO] for the sale of the '692 Patent.

(B&L's SMF [445] at ¶ 39 and Pls.' Resp. to B&L's SMF [504] at ¶ 39.) This provision expressly contemplates the exact transaction about which plaintiffs now complain: a transfer of the licensed patents to a party other than L&G as part of a sale of substantially all of B&L's assets. It would have been unnecessary to include this provision in the 2005 Release if SIPCO had retained its rights of notification and first offer under the 2004 Notification Agreement. *See Anderson,* 274 Ga. at 226 (stressing the importance of looking to

20

the whole contract in arriving at the construction of any part).

Moreover, plaintiffs do not persuasively counter the evidence in the record that one of both B&L and SIPCO's primary objectives in executing the 2005 Release was to be relieved of their mutual obligations under the Notification Agreement. (B&L's Br. in Supp. of Summ. J. [446] at 6-9.) When the parties entered into the Release, B&L was in negotiations to sell substantially all of its assets to Motorola. (Id. at 8.) B&L therefore wanted to be relieved of its notification obligations to SIPCO in the event its negotiations with Motorola were successful. (Id.) Plaintiffs do not dispute that they knew about the Motorola negotiations in October, 2005, and were thus aware of B&L's objectives for obtaining a modification of the rights of notification and first offer in favor of SIPCO. (Id. at 8-10, Pls.' Consolidated Resp. [499] at 59-80, and Pls.' Resp. to B&L's SMF [504] at ¶ 17.)

At the same time, SIPCO had a corresponding interest in modifying the terms of the Notification Agreement. In mid-2005, plaintiffs had decided to establish a holding company for the purpose of combining the patent assets of SIPCO and IP CO. into a single corporate entity. (Pls.' Resp. to B&L's SMF [504] at ¶ 7.) SIPCO and IP CO. principals believed that putting their assets "under one roof" of a common holding company would enhance the patent portfolios and improve investment opportunities. (Id. at ¶ 8.) B&L's right of

21

first offer under the 2004 Notification Agreement presented a potential bar to plaintiffs' proposed consolidation and transfer of the patents to a new entity. (*Id.* at ¶ 13.) Accordingly, SIPCO negotiated for and obtained a modification to the Notification Agreement, which permitted SIPCO to assign the rights underlying the Agreement to a holding company without B&L's consent.[6] (*Id.* at ¶¶ 21-23, 30-31.)

The evidence in the record concerning the parties' negotiations and conduct bolsters the Court's conclusion, based on the plain language of the 2005 Release, that ¶ 10.4 of the Release modified and superseded the Notification Agreement. As modified by the 2005 Release, B&L's sale of the licensed patents in conjunction with a sale of "substantially all" of its assets to any entity was exempt from the rights of notification and first offer imposed by the 2004 Notification Agreement. As discussed above, the Hunt transaction involved a sale of "substantially all" of B&L's assets. For this additional reason, the Court **GRANTS** B&L's motion for summary judgment on plaintiffs' right of first offer claim [427], and also **GRANTS** B&L's motion for summary judgment on the supersession issue [430].

---

[6] Immediately following the execution of the Release, SIPCO's David Petite sent an e-mail to a potential investor indicating that it was now "clean" to sell SIPCO and IP CO.'s patent assets to a holding company. (Pls.' Resp. to B&L's SMF [504] at ¶ 48.)

3. There are questions of fact as to whether SIPCO breached its contractual obligations to B&L, and whether any breaches were material.

In its final motion for summary judgment, B&L argues that it should be relieved of its obligations under the Notification Agreement as a result of SIPCO's prior, material breaches of the related Licensing Agreement. (B&L's Mot. for Summ. J. Regarding SIPCO's Material Breaches [423].) In support of this argument, B&L cites § 1.3 and §§ 5.1 and 5.2 of the Licensing Agreement. (B&L's Br. in Supp. of Mot. for Summ. J. [449] at 4, 10-11.) B&L claims that SIPCO violated § 1.3 of the Agreement by sub-licensing the Petite patents to three entities, including IP CO., without notifying B&L or ensuring that the sub-licenses contained various contractually required provisions. (*Id.* at 5-10.) In addition, B&L claims that SIPCO failed to provide the licensing and audit reports required by §§ 5.1 and 5.2 of the Agreement. (*Id.* at 10-12.)

Under Georgia law, a party "must have performed all his obligations under [a] contract" in order to recover damages for its breach. *Corrosion Control, Inc. v. William Armstrong Smith Co.,* 148 Ga. App. 75, 75 (1978). *See also Burnham v. Cooney,* 265 Ga. App. 246, 249 (2004)(a "party committing breach of contract cannot maintain an action against [an]other contracting party for failure to perform if promises are dependent"). However, "substantial compliance with the terms of the contract is all that the law

23

requires." *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (2008). Moreover, a party's non-compliance may be waived by "continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract." *Young v. Oak Leaf Builders, Inc.*, 277 Ga. App. 274, 277 (2006). Whether a party has substantially complied with its contractual obligations, and whether there has been a waiver of any non-compliance, are generally questions for the jury. *Id.* *See also TRST Atlanta, Inc. v. 1815 Exch., Inc.*, 220 Ga. App. 184, 187 (1996)(finding questions of fact on the substantial compliance issue).

Plaintiffs have presented evidence that SIPCO substantially complied with the sub-licensing restrictions of § 1.3, as well as the reporting requirements of §§ 5.1 and 5.2, of the Licensing Agreement. (*See* Pls.' Consolidated Resp. Br. [496] at 23-47.) In fact, in conjunction with the Hunt transaction on July 31, 2006, B&L represented to Hunt that "there [we]re no uncured material breaches or defaults existing on the part of [SIPCO]." (*Id.* at 34.) Additional evidence in the record, construed most favorably to plaintiffs, further suggests that B&L waived its right to contest SIPCO's non-compliance. (*Id.* at 23-47.) Most notably, B&L did not object to SIPCO's licensing activities under § 1.3, or insist on additional reports under §§ 5.1 and 5.2, until after this litigation

24

commenced. (*Id.* at 47.) In the meantime, B&L continued to accept the benefits under the Agreement, including $1,550,000 in payments from SIPCO. (*Id.* at 3.)

Based on the above evidence, a jury might reasonably conclude that SIPCO materially complied with its obligations under the Licensing Agreement and/or that B&L waived SIPCO's alleged breach of its various sub-licensing and reporting obligations. Accordingly, B&L's motion for summary judgment regarding SIPCO's material breaches [423] is **DENIED.**

To the extent B&L relies upon SIPCO's breach of the Licensing Agreement as a defense to SIPCO's right of first offer claim under the Notification Agreement, its arguments are moot as a result of the Court's rulings on B&L's other motions for summary judgment. B&L should inform the Court if it intends to seek additional remedies or damages on its claim regarding SIPCO's alleged breach of the Licensing Agreement.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS as unopposed** B&L's Motion for Summary Judgment on Certain of Plaintiffs' Affirmative Defenses [416] and B&L's Motion for Summary Judgment on IP CO.'s Breach of Contract Claim [418]; **GRANTS** B&L's Motion for Summary Judgment on Plaintiffs' Right of First Offer Claim [427], B&L's Motion for Summary Judgment on Supersession of the 2004 Right of

AO 72A
(Rev.8/82)

First Offer Provision by the 2005 Release Agreement [430] and B&L's Motion for Summary Judgment on SSI's July 31, 2006 Transfer of "Substantially All of its Assets" as a Matter of Law [433]; **DENIES** B&L's Motion for Summary Judgment Regarding SIPCO's Material Breaches [423]; **GRANTS** Plaintiffs' and Cellnet and Hunt's Joint Motion to Dismiss [529], Plaintiff SIPCO and B&L's Joint Motion for Extension of Time [549], and Plaintiffs' Unopposed Motion to Extend Time to Reply to Defendant's Response [553]; and **DENIES as moot** Cellnet and Hunt's Motion for Leave to File Under Seal [516], Cellnet and Hunt's Motion for Leave to File Excess Pages [421], Cellnet and Hunt's Motion for Summary Judgment on Counts Two, Three, Four, Five, and Seven [422], Cellnet and Hunt's Motions for Summary Judgment on Counts Five and Six [425] and [426], and Hunt's Motion for Summary Judgment on Counterclaim Three of its Answer and Counterclaims [429].

Given the Court's rulings in this Order, and the plaintiffs' recent settlement with defendants Cellnet and Hunt, it is unclear which of the remaining claims and counterclaims the parties intend to pursue. It is also unclear whether plaintiffs still desire a ruling on its recently filed motions to amend the complaint [543] and to compel funding of an escrow account [546]. The Court **ORDERS** the parties to file a joint statement **within ten (10) days** of this Order setting forth the claims that remain to be decided by a jury. The Court further **ORDERS** plaintiffs to advise the Court **within ten (10)**

**days** of this Order whether to proceed on the outstanding motions [543] and [546].

SO ORDERED, this 2⅄ day of September, 2009.

_____

JULIE E. CARNES

UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)